### McDONALD v ROSS et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1391. Decided Feb 8, 1937

Allaman, Funkhouser & Murr, Dayton, and Allan C. McDonald, Dayton, for appellants.

Daniel Dwyer, Dayton, for appellee Rader.

## OPINION

By THE COURT

On February 2, 1932 the plaintiff filed a petition against defendants David E. Ross and wife and certain banks and building and loan associations in the City of Dayton. The action was for specific performance against the Rosses with an alternative prayer for damages if specific performance could not be decreed, because of the failure of the Rosses to comply with the terms of an exchange agreement whereby the plaintiff and they transferred properties of the one to the others. The banks and building and loan associations were made parties to determine whether or not they held funds or deposits to the credit of the Rosses which might be available to apply to any order or judgment that eventually might be decreed or awarded plaintiff against the Rosses.

The petition further averred that as a part of the consideration moving from the plaintiff to the Rosses he executed and delivered his promissory note, payable to them, in the sum of $1500.00 dated February 9, 1931 and due one year after date. The petition also sought a temporary restraining order against named defendants and such an order was issued, among other things, restraining the defendants, the Rosses, from disposing of or encumbering the note for $1500.00 heretofore described. Several of the financial institutions which were made parties defendants answered, but their answers or action taken respecting them is not germane to the question presented on review.

On December 2, 1932 the Rosses filed their answer, in which they admitted the transaction as plead in the petition, averred that the plaintiff had not performed his obligations under the exchange agreement and denied any conduct on their part which would justify the relief which plaintiff prayed.

Upon the issues drawn between the plaintiff and defendants Rosses the cause came on for hearing to Judge Snediker on December 5, 1932. The plaintiff was present on his own behalf and Daniel Dwyer on behalf of the defendants Rosses. The hearing proceeded and testimony was taken, devoted almost entirely to the transactions of which the plaintiff complained against the defendants Rosses. Little or no mention was made of the $1500.00 note at any time until evidence had been accepted, which comprises 76 pages of the record in the bill of exceptions. At this juncture the plaintiff had rested in chief and Mr. Ross had been offered as a witness for the defendant and was under cross-examination. The record discloses the following:

"MR. McDONALD: What I was going to suggest; besides being liable to the Mutual Home Association as I am, and being held under strict liability to them, I have a $1500.00 note involved in this situation here and manfiestly I am compelled to respect the obligation on the Shiloh property. It isn't a question of my wanting to; it is what I am compelled to do. I can't look to Mr. Ross, of course, for any help.

"MR. DWYER: I have the note, Mr. McDonald, here. He has turned this note over to me. Mr. Rader has, the brother-in-law of Mr. Ross, not for anything, I mean I have the note, he hasn't asked me to collect it, he hasn't asked me to do anything with it. Mr. Ross transferred it to him prior to the suit. The note is right in court here.

"THE COURT: Let's see it.

"MR. DWYER: And I am not authorized to act for him. But as far as the note goes I don't know whether—I mean, I don't think it affects the case. The case is affected by it—I mean it affects the case but apparently he is not pressing the thing.

"MR. McDONALD: Who do you say Mr. Rader is?

"MR. DWYER: Mr. Rader is Mrs. Ross's brother.

"WITNESS: No; Rader at present is no relation at all. He married a sister to my wife. His wife is dead and so he is no longer any relation.

"MR. DWYER: I thought he was your brother-in-law.

"WITNESS: Well, he was at one time.

"BY THE COURT: Q. You say that it was endorsed over to your brother-in-law? A. Yes.

"Q. Before it became due?

"A. Yes; June of. 1931.

"THE COURT: It would be hard to get around that.

"MR. McDONALD: That is, of course, sort of a family arrangement.

"THE COURT: The only question is whether you got any consideration for it.

"WITNESS: Certainly; yes.

"MR. DWYER: I actually have the note in my possession.

"THE COURT: Get it and show it to Mr. McDonald and show him what the conditions are: I don't want to pass on this if it is possible now in any way to help out everybody concerned, particularly Mr. McDonald, who is solvent and worth the thing.

"MR. DWYER: You see where we are, your Honor. We aren't shirking our obligation. Mr. Ross owed me some money and I insisted on him giving me a note.

"THE COURT: I won't determine anything until you gentlemen have time to see if you can't adjust the thing between you."

Thereafter but a little more than a page of further testimony was taken.

On January 31, 1933 an entry was filed, approved by the trial judge and by counsel for plaintiff and by Mr. Dwyer as counsel for defendant without further determination, which recites in substance that:

"It appearing to the court that one C. A. Rader is the personal owner of a note for $1500.00 dated February 9, 1931, etc. (describing the note mentioned in the petition), it is found that Rader is a necessary party to the proceedings and accordingly is made a party defendant."

Thereupon, on the same day, Rader answered the petition by a general denial and filed a cross petition in which he asserted that:

"He is the owner and holder in due course without notice of a certain note (note described in the petition), which note was endorsed and delivered to him by the said David Ross and Effie M. Ross on June 10, 1931 for value received; that the note is due and unpaid and prays judgment for the face amount of the note, with interest at 7%, from February 9, 1931 and costs."

To this answer and cross petition the plaintiff replied, particularly denying the averments that the defendant Rader was the holder of the note in question for valuable consideration before maturity and without notice of the defenses existing thereto on the part of the plaintiff against the defendants Rosses.

On October 5, 1933 a second and final hearing was had, Judge Snediker presiding. This testimony constitutes the remainder of the transcript of testimony and is comprised in pages 80 to 100 of the record and is confined almost exclusively to the issue drawn on the cross petition of the Rosses and the reply thereto by the plaintiff.

Following the conclusion of the hearing nothing further was done in the cause until December 22, 1933, when plaintiff filed his brief. The matter pended until May 3, 1934, when the brief of defendant C. A. Rader was filed. An examination of these briefs discloses that the arguments therein contained were confined to the issues drawn between defendant Rader and the plaintiff respecting the note. No argument was urged to the court touching the legal rights of the plaintiff against the defendants Rosses upon the issues joined between them. On May 25, 1934, the court handed down a written decision, in which it made a finding for Rader on his cross petition. Thereafter, on May 25, 1934, the plaintiff moved upon three grounds to set aside the decision of the trial court, which on January 25, 1936, was overruled. Thereupon the judgment entry was of that date filed, in which there is a finding for the defendant Rader that he is the holder in due course of the note mentioned in the petition and judgment is entered in his behalf in the sum of $2016.25 and costs.

On January 28, 1936 a motion for new trial was filed The motion consists of three branches, as follows: (1) that the judgment is not supported by sufficient evidence and is contrary to law; (2) that the judgment is contrary to the weight of the evidence and (3) because of newly discovered evidence material to the plaintiff, which he could not have, with reasonable diligence, discovered and produced at the trial.

There is also appended a general claim of other errors apparent upon inspection of the record. It will be noted that this last motion was filed subsequent to the judg-

ment entry and could not in any sense be considered as a motion for new trial. The motion filed after the finding of the trial court is identical with the later motion for new trial, with the exception that only the three grounds appear which are heretofore specifically set forth.

As a part of the motion of May 25, 1934, the following appears:

"Said newly discovered evidence, consisting of testimony by plaintiff in contradiction of that offered by defendant C. A. Rader, as to the alleged conversation had between him and plaintiff, said plaintiff not knowing of said testimony until the submission of brief by counsel for said defendants.

"Said defendants David E. Ross and Effie M. Ross, one or both, gave an alleged promissory note, due in thirty days, to their counsel here for a sum in excess of $800.00 while this cause was pending, purporting to be given for attorney fees."

That thereafter judgment had been taken by payee on said note and that such proceedings were for the purpose of preventing the plaintiff from levying on chattel property belonging to the defendants; that the testimony presented at the hearing confused the $1500.00 note in issue with the $800.00 note claimed to have been executed by counsel to the defendants; that these facts were unknown at the time of the hearing and not until after rendition of the court's decision. From the judgment of the trial court an appeal on questions of law is prosecuted.

We have set forth the proceedings at considerable length and in chronological order, because in so doing the necessity of the determination which we reach upon the assignments of error becomes apparent. The assignments of error, as appearing in the brief of counsel for the plaintiff are seven. These errors must of necessity be confined to the grounds set forth in the motion to set aside the finding of the trial court and for a new trial. The first three assignments of error may be epitomized as raising the claim that the finding and judgment of the trial court were manifestly against the weight of the evidence on the question of the capacity in which Rader held the note described in the petition.

We have carefully read this bill of exceptions and find nothing in it which varies in the slightest degree from the cases which regularly come to this court, in which there is conflict in evidence on a factual con-

troversy. On behalf of Ross it appeared in the first hearing that he was then claiming that Rader was the owner of the note for value as of June 1, 1931. Mr. Ross' statement is unequivocal that he had not owned the note from that date nor had it been in his possession. Following this statement the plaintiff soon thereafter rested his case. At this stage of the proceedings, had nothing further occurred, there would have been nothing in the record which could in the slightest degree have prevented the court from then holding that the Rosses did not own or hold the note and that no relief whatever could be granted to the plaintiff respecting the note.

The burden of proving that the Rosses still owned the note, in the light of the state of the record when this testimony was received, was clearly upon the plaintiff and definitely he must have failed upon this question at the conclusion of the first hearing, had the cause then been terminated. It was on the court's own suggestion that Rader was made a party defendant. It is true that Rader delayed answering for many months, but this delay was only one of several which this record too patently discloses.

When the cause again came on for hearing Mr. Rader took the stand, testified expressly that he was the owner and holder of the note for value before due without knowledge of any infirmity against it, told in detail the circumstances under which the note was received, testified as to the dates when the money had been advanced representative of consideration for the transfer of the note, produced the note with the endorsement thereon, bearing the date as testified, signed by the Rosses. Mr. Ross also confirmed this testimony without exception. The former family relation of these parties appears.

It is significant that the sheet from the account book wherein the Rosses had entered the transactions, showing the advancement of the two items of money to the Rosses was offered in evidence by counsel for plaintiff. Whatever probative effect this evidence had cannot now be questioned by the plaintiff, upon whose motion the evidence was forthcoming. The trial judge evidently gave some weight to this testimony because he says it was a part of a series of entries obviously made at different times and appearing in the book in chronological order.

Independent of the testimony of but one witness the strength of plaintiff's case must depend entirely upon inferences urged

as properly to be drawn from the express testimony of the witnesses on behalf of defendant Rader. This one exception is the statement of the witness Abraham Hay, former cashier of the First National Bank ·of Brookville, Ohio, and whose testimony expressly refuted the claim that the note had been transferred by the Rosses to ·Rader in June, 1931. It seems evident that the note concerning which Mr. Hay had conversation with Mr. Ross was the Mc-Donald note described in the petition and the time when he fixed this conversation was in August or September, 1931. It is obvious that if the Rosses then had this note his statement that it had not been in their possession and that they had transferred it ·to Rader in June, 1931, could not be true. However, the trial court had this testimony, together with that of all the other witnesses and did not find that it was strong enough to overcome the weight to be accorded to the evidence on behalf of Rader. There is this, also, to be said touching the testimony of Hay. Granting that all that he says is true, it would not be binding upon Rader unless the court could find further that there was a conspiracy between Rader and the Rosses relating to the transfer of the note.

To reverse this cause and remand it for new trial as being unsupported by the evievidence and manifestly against the weight thereof would require that we violate a well-defined rule controlling actions of re·viewing courts when determining whether or not a trial judge acting as a jury erred in weighing the evidence. Unless the decision of the trial judge is so manifestly against the weight of the evidence as to shock the senses of a reviewing court it should not be disturbed. Every reasonable intendment must be adopted to support the conclusion reached. Applying this criterion we cannot say that this record requires the ·conclusion that the trial court erred to the prejudice of the plaintiff in weighing the testimony.

The fourth ground of the motion relates to the claim of newly discovered evidence. This claim in its entirety could be dis-·posed of in fairness to the plaintiff upon ·the well recognized principle that nothing set forth as constituting the newly discovered evidence could properly come under this classification. Due diligence on the part of the plaintiff in every instance would have afforded him full information respecting all of the subject matter set forth as constituting newly discovered evidence. This is obvious from the memorandum attached to the motion of the plaintiff for a new trial. It is said that he did not know of certain testimony respecting a certain conversation between him and Mr. Rader until the submission of the brief of counsel for the defendants. In the first place, an examination of this testimony discloses that giving full weight and effect to the evidence of Mr. Rader it had no probative effect whatever against any claim of the plaintiff. This statement is found at page 89 of the record, in which the witness states that Mr. McDonald said to him:

"You know it will be all right when Mr. Ross comes up with his part of the contract —something on that order."

If it be granted that Mr. McDonald made this statement, still it would not prejudice him· in the slightest degree because it is consistent with the position that he must have maintained from the inception of his cause, to the effect that he was able, ready and willing to carry out his part of the contract .with the Rosses, but that they had failed to comply wtih their obligations to be performed. Then, too, as the subject matter complained of came to ·the attention of plaintiff in the brief of counsel for the defendants, there was yet time to have invoked the consideration of the court, reopen the cause and tender any testimony which would ·have refuted that to which objection is now urged.

It is further claimed that the note which Mr. Ross gave to Mr. Dwyer may have been involved in some manner with the note described in the petition. It is quite true that the early statements of Mr. Dwyer respecting this note were volunteered and were ambiguous, but upon fair consideration of the whole record there ·can be no doubt that these notes (the one described in the petition and the one to which Mr. Dwyer referred) were separate and distinct and bore no relation to each other.

The claim that Mr. Dwyer by taking judgment on his note against Mr. Ross would have precluded the plaintiff from asserting some right by way of levy on the property of the Rosses can be of no weight because the plaintiff would have no such right upon any view of the development · of. the proceedings in this case. His right to levy on chattel property of the Rosses would only accrue when and if he had a judgment against them. Finally, the controversy respecting these notes could have

no place on the issues drawn between defendant Rader and the plaintiff and were confined exclusively, if they had any application whatever, to the issues made between the plaintiff and the Rosses.

It is further asserted that the plaintiff was entitled to a finding in his favor against the defendants, the Rosses. We find a statement of the trial court to the effect that counsel had agreed that he should pass only upon the issues drawn between the plaintiff and defendant Rader. This agreement appears no place in the record. But whether or not the plaintiff was entitled to a finding against ▬▬▬ ▬ the defendants Rosses cannot be determined by this court on review of a judgment wherein there was no finding and judgment for or against the plaintiff or for or against the Rosses on the issues joined between them. The fact is that the trial court did not adjudge the rights as between the plaintiff and the Rosses and until such judgment is entered one way or the other, this court cannot determine the correctness thereof until after proper proceedings to bring it to our attention.

We recognize, as did the trial court, the unfortunate position in which the plaintiff was enmeshed by reason of his liability not only on the mortgage on the property which he deeded to the Rosses, but by reason of his assumption of the mortgage on the real estate deeded by the Rosses to him and especially in view of his solvency. The trial judge indicated a purpose to be helpful if within his power so to do and with that purpose, had it been exercised, this court would be in sympathy insofar as any action, had it been taken, could have been supported at law.

Upon a fair consideration of all the errors urged touching the judgment of the trial court in favor of Rader and against the plaintiff, we find no prejudicial error and the judgment must, therefore, be affirmed. Exceptions may be noted.

CRAIG, PJ, BARNES and HORNBECK, JJ, concur.